OPINION
{¶ 1} Jamila House was found guilty after a bench trial of assault, a first degree misdemeanor. The trial court imposed and suspended a thirty-day jail sentence, fined House $50.00, and placed House on unsupervised probation, a condition of which was that House avoid contact with the complainant, Aleithia Brewer. House was found not guilty of a companion charge of aggravated menacing.
 {¶ 2} In her single assignment of error on appeal, House claims her conviction was against the manifest weight of the evidence.
 I. {¶ 3} The charges arose out of an altercation occurring mid-morning on October 19, 2004, at the Dayton Board of Education Transportation Center.
 {¶ 4} Earlier that morning, House accompanied her son to his bus stop where he boarded a school bus operated by Brewer. House claims she saw her son fall into his seat as a result of Brewer's too rapid pulling away from the bus stop. Disturbed by what she had seen, she drove to the Transportation Center where she lodged a complaint against Brewer. House then, according to her testimony, went looking for her brother, who worked at the Transportation Center.
 {¶ 5} Outside, but on the premises of the Transportation Center, House encountered Brewer and her father, Eugene Brewer, a Board of Education bus driver, who were in the process of leaving.
 {¶ 6} At this point, the State's and House's versions of what happened sharply differ.
 {¶ 7} Brewer testified that House angrily accosted her and accused her of pulling away from the bus stop before her son was seated, causing him to almost fall. House was within inches of her face, cursing Brewer as she accused her. Brewer said she apologized to House for what House thought she observed, although denying the accusation. When House persisted, Eugene Brewer — a fifteen-year employee of the Board of Education — stepped between the two women and told House to leave because she was trespassing. House turned on the father, cursing him and telling him to stay out of the dispute between her and Brewer. When Brewer started to walk away, House attempted to strike Brewer, although Eugene Brewer — who was still between the women — took most of the blows intended for Brewer. When House almost succeeded in hitting Brewer in the face, Brewer responded by hitting House, after which House "kind of like fell back into like some bushes or whatever." After Eugene Brewer helped House up, House approached Brewer "windmilling" and hit Brewer in the mouth, causing "a little swelling." After that, House and Brewer "just got to going at it" until other employees separated them.
 {¶ 8} Eugene Brewer's testimony generally corroborated his daughter's testimony that House was the aggressor. He did testify, however, that House did not fall — either to the ground or into bushes — after his daughter first struck House. He also said he saw House hit his daughter in the chest at least twice, but not in the mouth.
 {¶ 9} Angela Miller, another bus driver, did not see how the incident started. She testified that — upon leaving the Transportation Center building — she saw House hit Brewer and Brewer hitting her back. She did not see House fall or see her by any bushes.
 {¶ 10} House denied cursing during the encounter with Brewer and her father. She testified she was going to visit her brother when she encountered Brewer and her father. While admitting she inquired of Brewer about her pulling away from the bus stop in such a way as to cause her son to almost fall, she did not do so in a loud and confrontational way. Rather, she said, it was Eugene Brewer who was loud and confrontational, and that Brewer reached around her father and hit her. She denied trying to hit Eugene Brewer or his daughter first. She said Brewer's first blow knocked off her glasses and while she was searching for them, Brewer came at her, they started fighting, and Brewer pinned her against a car and struck her in the face and eye.
 II. {¶ 11} Before the trial court announced its verdicts, it stated, in part:
 {¶ 12} "THE COURT: First of all the court believes the testimony of the complainant, that would be Mrs. Aleithia Brewer and also of her father, Eugene and of also Angela Miller. I believe that the witnesses testified to what they perceived. Some of the testimony may be different, but I believe they were credible and actually gave an account of what they actually thought they perceived on the date in question. Miss House the court believes you in part. The only thing that the court has a problem with your testimony is the initial part of your contact with Miss Brewer. The court believes that you did in fact were the aggressor. The court believes, based upon the evidence, because it just makes sense. The court believes that you did in fact start the altercation. The court believes that you threw the first punch. The court believes that you did unlawfully and knowingly cause or attempt to cause physical harm to Miss Brewer from the very beginning."
 III. {¶ 13} In State v. Thompkins (1997), 78 Ohio St.3d 380,387, the court discussed manifest weight reversals, in part, as follows:
 {¶ 14} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs [v. Florida (1982)], 457 U.S. (31) at 42,102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v.Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219,485 N.E.2d 717, 720-721 (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction')."
 {¶ 15} House's first contention in support of her claim that the verdict is against the weight of the evidence is that of the four witnesses, only Brewer testified that House fell back into some bushes after Brewer struck her the first time. The trial court expressly discounted the importance of this discrepancy. In our judgment, the trial court did not act unreasonably in doing so. This discrepancy undeniably goes to the weight of the evidence, but whether House fell or not is, at most, of secondary importance in determining whether House had committed assault. Further, Miller's testimony was to the effect that she was not present to observe whether House fell after Brewer first struck her, which reduces the discrepancy to one between one particular of Brewer's account, and one particular of her father's and House's account.
 {¶ 16} House next argues that it would make no sense for her to become violent with Brewer or her father because she had already lodged a complaint, and her becoming violent would have undermined the credibility of her complaint. We disagree. House was admittedly angry about what she perceived was careless treatment of her son. The encounter with Brewer and her father occurred not long after her son had boarded Brewer's bus. We believe the trial court could have reasonably concluded that lodging her complaint had not dissipated the anger House felt toward Brewer for her perceived careless treatment of House's son.
 {¶ 17} Finally, House argues that it was Brewer who assaulted House, pointing to Brewer's testimony that she struck House before House struck her.
 {¶ 18} This argument ignores the testimony of Brewer and her father that House had attempted to strike Brewer several times by reaching around the father, who was shielding Brewer — the father absorbing several blows — and that Brewer only hit House after House had barely missed striking her. Thereafter, Brewer testified that House hit her in the mouth, resulting in a swollen lip. This was the assault of which House was found guilty.
 IV. {¶ 19} Because we conclude that the judgment is not against the weight of the evidence, the assignment of error is overruled.
 {¶ 20} The judgment will be affirmed.
. . . . . . . . . .
Fain, J. and Donovan, J., concur.